WILSON, Circuit Judge,
concurring in part and dissenting in part:
I concur with the majority’s opinion insofar as it holds that the application of the “cold, calculated, and premeditated” statutory aggravating factor in this case does not violate the ex post facto clause of the United States Constitution. U.S. Const, art. I, § 9. Relying upon clear precedent, the Florida Supreme Court determined that, although this aggravating factor was enacted after Muhammad committed the Gans murders, its application did not add anything new to the elements of the crimes for which he was convicted and did not disadvantage him. Knight v. State, 746 So.2d 423, 434 (Fla.1998) (holding that the application of the “cold, calculated, and premeditated” factor is not an ex post facto violation where defendant was already convicted of premeditated first degree murder); see Combs v. State, 403 So.2d 418, 421 (Fla.1981) (holding that the application of this aggravating factor did not violate the ex post facto clause because it “reiterates in part what is already present in the elements of premeditated murder”).
Indeed, the Florida Supreme Court’s decision in this case was neither contrary to nor an unreasonable application of clearly established Federal law. See 28 U.S.C. § 2254(d)(1); Evans v. Sec’y, Dept. of Corr., 703 F.3d 1316, 1325 (11th Cir.2013) (en banc). A law violates the ex post facto clause if it applies to events occurring pri- or to its enactment and disadvantages the offender by altering the definition of criminal conduct or increasing the punishment for the crime. Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); see Cornell v. Texas, 529 U.S. 513, 568, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000). Specifically, this court previously rejected the claim that this aggravating factor violates the ex post facto clause where the facts that the trial judge relied upon in applying the factor were the same as those underlying other aggravating factors and thus did not disadvantage the defendant. Francis v. Dugger, 908 F.2d 696, 705 (11th Cir.1990) (holding that no ex post facto violation occurred because the application of the aggravating factor “cold, calculated, and premeditated” did not disadvantage the defendant). Where, as here, the application of the “cold, calculating, and premeditated” factor did not disadvantage Muhammad, I agree that the state’s decision is not contrary to or an unreasonable application of Federal law as established by the Supreme Court.
Nevertheless, I have reservations about the majority’s finding that it need not determine whether Florida’s procedural bar was adequate, and its conclusion that Muhammad’s 1996 resentencing hearing did not violate his rights under the Confrontation Clause of the Sixth Amendment.

A. Florida’s procedural bar on Muhammad’s Confrontation Clause claim was inadequate

First, with regard to Florida’s procedural bar, I respectfully disagree that it is too *1080 complex an issue to decide. A federal court reviewing petitions for habeas corpus will not review a claim rejected by a state court “if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.” Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Conner v. Hall, 645 F.3d 1277, 1287 (11th Cir.2011); Smith v. Dep’t of Corr., 572 F.3d 1327, 1336-37 (11th Cir.2009). In order to qualify as an “adequate” procedural ground, the state rule must be “firmly established and regularly followed.” Walker v. Martin, - U.S. -, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011). Also, in order to be “adequate,” the rule cannot have been applied by the state court in an inconsistent or manifestly unfair manner. See Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir.1995); Hansbrough v. Latta, 11 F.3d 143, 145 (11th Cir.), cert. denied, Alabama v. Hansbrough, 513 U.S. 914, 115 S.Ct. 291, 130 L.Ed.2d 205 (1994).
In this case, the district court correctly found that the Florida Supreme Court’s decision to bar Muhammad’s Confrontation Clause argument did not rest on a “firmly established and regularly followed” Florida procedural rule, as required. Muhammad v. Tucker, 905 F.Supp.2d 1281, 1293 (S.D.Fla.2012) (citing Conner, 645 F.3d at 1288). It is evident that, at his resentencing hearing, Muhammad’s counsel specifically made a standing objection to the hearsay testimony proffered by Detective Smith grounded in the Confrontation Clause of the Sixth Amendment.[1] Indeed, throughout Detective Smith’s testimony, Muhammad’s counsel continued to object, provoking the judge’s explicit acknowledgement that the testimony was hearsay and that Muhammad raised a Confrontation Clause argument.[2] Nevertheless, the Florida Supreme Court barred this claim, finding that there had been no objection to testimony about out of court statements made by the airplane pilot or Detective Ojeda. Knight v. State, 746 So.2d 423, 429-30 (Fla.1998). Given Florida courts routinely accept standing objections when the court is put on notice of the basis for the objection, this procedural bar is inadequate. Corona v. State, 64 So.3d 1232, 1242 (Fla.2011) (holding that a standing objection which informs the court of the perceived error is sufficient to preserve a Confrontation Clause argument on appeal); Floyd v. State, 850 So.2d 383, 393 n. 20 (Fla.2002) (recognizing petitioner’s continuing objection before the trial judge); Hopkins v. State, 632 So.2d 1372, 1376 (Fla.1994) (finding that the standing objection was preserved where the trial court was put on notice of the potential error by the pretrial hearing and defense counsel’s request for a continuing objection).
Further, the cases cited by the Secretary for the proposition that Muhammad’s *1081 objections were insufficient are distinguishable. For example, in Ferguson v. Secretary for the Department of Corrections, this court noted that the trial record showed defense counsel requested an evidentiary hearing to permit the introduction of further mitigating evidence as opposed to making a due process objection. 580 F.3d 1183, 1213 (11th Cir.2009). In fact, Ferguson’s counsel failed to object when the judge specifically asked whether there was any legal reason why it should not resentence him. Id. This court clarified that under the contemporaneous objection rule, “an issue is properly preserved if the trial court knows that an objection was made, clearly understands the nature of the objection, and denies that request.” Id. at 1212. In Corona v. State, 64 So.3d 1232, 1242 (Fla.2011), the Florida Supreme Court concluded that the trial court was aware of the nature of the defendant’s objections regarding his daughter’s hearsay testimony, largely because it overruled similar objections in a pretrial conference. Thus, the Corona court concluded that because the defendant fairly apprised the court of the basis of his objections and the relief sought, he preserved his Confrontation Clause argument on appeal. Id. at 1243. Finally, the Secretary’s reliance on Silvia v. State, 60 So.3d 959 (Fla.2011), is unpersuasive. In Silvia, the defendant made a general objection to victim impact evidence and not to any particular statement in the letters that were read during the penalty phase of trial. Id. at 977-78. The Florida Supreme Court clarified that because defense counsel had not specifically objected or articulated the basis for any objections, the defendant must establish on appeal that a fundamental error or a violation of due process occurred. Id. at 977. Here, unlike in Silvia, Muhammad’s counsel repeatedly objected to the introduction of testimony, both on the basis of hearsay and the Confrontation Clause. In fact, counsel’s objections were so clear and specific that the trial judge asked counsel to stop making them. See Tucker, 905 F.Supp.2d at 1294 (quoting the trial judge’s warning that it did “n[o]t want to hear the same objection [that] ... [t]his is hearsay [or] your confrontation rule argument”).
In addition to being unpersuasive, the Secretary’s argument that Muhammad’s objections lacked the specificity to be preserved does not reflect the Florida Supreme Court’s actual basis for finding the procedural bar. Instead of finding that Muhammad’s objections were insufficiently specific, the court precluded Muhammad’s Confrontation Clause argument on direct appeal because it found that he did not object to Smith’s testimony as to statements made by Detective Ojeda or the pilot at all. See Knight v. State, 746 So.2d 423, 430 n. 9 (Fla.1998).
In sum, Florida courts have routinely considered issues upon which parties made a standing objection to be preserved for appeal, see, e.g. Floyd, 850 So.2d at 393 n. 20, and the Secretary’s arguments for why Muhammad’s arguments should be procedurally barred are unavailing. Therefore, the district court correctly held that the Florida Supreme Court’s procedural bar under these circumstances was inadequate and appropriately considered Muhammad’s Confrontation Clause argument.

B. The resentencing hearing violated Muhammad’s rights under he Confrontation Clause

While agreeing that the legal precedent on this issue is complicated, I ultimately agree with the district court that the Confrontation Clause of the Sixth Amendment applies in capital sentencing proceedings.
The Supreme Court has held that trial courts may consider hearsay testimony at *1082 capital sentencing hearings. Williams v. New York, 337 U.S. 241, 250-51, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (holding that courts may consider presentence investigative reports, which were described to the parties but not subject to cross-examination without violating due process); Williams v. Oklahoma, 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (holding that courts may consider “unsworn or ‘out-of-court’ information relative to the circumstances of the crime and to the convicted person’s life and characteristics” at capital sentencing). Subsequently, the Supreme Court clarified that a court may not impose the death penalty on the basis of confidential information which is not disclosed to the defendant. Gardner v. Florida, 430 U.S. 349, 358, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
However, the Williams decisions precede the application of the Sixth Amendment to state criminal prosecutions through the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (holding that the right of an accused to confront witnesses against him is a fundamental right). Since then, the Supreme Court has expanded the application of the Confrontation Clause. See Davis v. Washington, 547. U.S. 813, 825-26, 829, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (refusing to limit Confrontation Clause protections to formal testimonial statements); Crawford v. Washington, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (barring out-of-court statements to police investigators absent witness unavailability and prior opportunity by the defendant to cross-examine). Moreover, this court has explicitly held that “the right to cross-examine adverse witnesses applies to capital sentencing hearings.” Proffitt v. Wainwright, 685 F.2d 1227, 1254 (11th Cir.1982). In Proffitt, we noted that “[bjecause the death penalty ... is permanent and irrevocable, the procedures by which the decision to impose a capital sentence is made bring into play constitutional limitations not present in other'sentencing decisions.” Id. at 1253. Proffitt specifically addressed the Supreme • Court’s trend towards imposing more procedural requirements in capital cases in order'to reduce the risk of arbitrary decision making. Id. For example, we noted that the Supreme Court’s more recent decision in Gardner, banning' reliance on information not disclosed to the defendant or his attorney, was “premised on the principle that death sentences may not constitutionally be imposed on the basis of information that the capital defendant has been afforded no opportunity to rebut.” Id. at 1253-54 (citing Gardner, 430 U.S. at 362, 97 S.Ct. 1197). Based upon this analysis of Supreme Court precedent, we concluded that “the right to cross-examine adverse witnesses applies to capital sentencing hearings.” Proffitt, 685 F.2d at 1254.
The majority insists that this conclusion in Proffitt was merely dicta and that by limiting its holding, in a subsequent addendum to the opinion, to cases involving the admission of psychiatric reports, this court clarified that it did not create a categorical bar to hearsay at capital sentencing hearings.[3] See Proffitt v. Wainwright, 706 F.2d 311, 312 (11th Cir.1983). At oral argument, Muhammad’s counsel argued that the addendum to Proffitt could be read as simply saying that under these circumstances, where the sources and au *1083 thors of a psychiatric report have not been cross-examined, use of the report in a sentencing violates the Sixth Amendment. The addendum’s use of the phrase “necessarily limited to the facts of the case before us,” id., suggests that the court merely pointed out that the case did not present an opportunity for a broader expansion of Confrontation Clause rights.
Regardless of the addendum’s significance at the time, this court has routinely cited Proffitt as authority for the proposition that the Confrontation Clause applies at a capital sentencing. Perhaps most significantly, in Moore v. Zant, 885 F.2d 1497, 1512 (11th Cir.1989) (en banc), this court announced that “[i]n light of [the Supreme Court’s trend toward expanding Sixth Amendment protections], reasonably competent counsel reasonably could have anticipated the extension of ... the right of confrontation[ ] to capital sentencing proceedings.” Id. In other words, Zant held that the district court did not abuse its discretion in finding counsel’s failure to raise Confrontation Clause objections to a presentence investigation report in a capital sentencing hearing inexcusable. Remarkably, we affirmed a district court finding that counsel’s failure to raise the issue was inexcusable before Proffitt was even decided because reasonably competent counsel could have anticipated the extension of the Confrontation Clause to capital sentencing hearings. Id. at 1511—12. Now the majority asserts that such an extension was never made, despite Proffitt ’s subsequent announcement.
More recently, this court has continued to cite Proffitt for its general proposition without limiting it to the narrow facts presented in that case. For example, in United States v. Brown, 441 F.3d 1330, 1361 n. 12 (11th Cir.2006) (per curiam), the court noted that “death is different,” and cited Proffitt for the proposition that “the constitutional right to cross-examine witnesses applies to capital sentencing hearings.” Id. In United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir.2005), while refusing to extend Crawford to non-capital sentencing, this court again recognized that death is different, noting that “we have recognized a right to cross-examination in the context of capital sentencing.” Id. (citing Proffitt, 685 F.2d at 1254-55); see also United States v. Sanchez, 278 Fed.Appx. 927, 929 n. * (11th Cir.2008) (distinguishing the sentencing at issue from a capital sentencing proceeding by noting that “Proffitt recognized a right to cross-examination in the context of capital sentencing”). Whatever the significance of Proffitt at the time, our subsequent treatment of Proffitt renders its broader proposition — that the right to cross-examine witnesses applies, to capital sentencing hearings — binding law in this Circuit.
To be clear, the Sixth Amendment right to confrontation is not as fulsome in a capital sentencing as during the guilt phase of a trial. For example, in 2001, this court rejected a Confrontation Clause claim in Chandler v. Moore, 240 F.3d 907, 918 (11th Cir.2001). In Chandler, the defendant had the opportunity during the guilt phase to cross-examine each of the State’s witnesses to whom the officer referred during the resentencing, and the State did not prevent him from rebutting the hearsay evidence of its witnesses. 240 F.3d at 918. Without citing Proffitt or the subsequent cases affirming the right to confrontation in a capital sentencing, this court explained that if it were to determine that hearsay evidence was per se inadmissible in a. capital sentencing, it would be announcing a new rule of law.[4] Id. At oral *1084 argument, Muhammad argued that Chandler can be read narrowly to show that, in that circumstance, the court identified indicia of reliability such that the testimony need not have been excluded. Second, the court characterized defendant’s failure to cross-examine witnesses during sentencing as a choice: “[t]he Sixth Amendment guarantees a defendant an adequate opportunity to cross-examine adverse witnesses. Chandler had this opportunity and capitalized on it during trial but chose not to during his re-sentencing phase.” Id. (citation omitted) (emphasis added). Indeed, Chandler recognized that “the state [must] protect a defendant’s rights by giving him/ her the opportunity to rebut any hearsay information.” Id. By contrast, in the present case, Muhammad did not have the choice of whether or not to cross-examine witnesses during his resentencing, and Detective Smith’s testimony included hearsay statements that were not included at trial.[5] Accordingly, Muhammad did not have the meaningful opportunity to rebut contemplated in Chandler.
The majority maintains that Muhammad had the opportunity to cross-examine Detective Ojeda and the airplane pilot during the guilt phase of his trial, to cross-examine Detective Smith during the resentencing, and to present his own witnesses. Accordingly, the majority is satisfied that Muhammad had an opportunity to rebut the hearsay evidence that is consistent with the legal precedent. Upon review, however, I am inclined to agree with the district court that Proffitt is good law which this court has repeatedly cited to acknowledge the applicability of the Confrontation Clause to capital sentencing proceedings. Proffitt has been understood by this court to extend Confrontation Clause protections to capital sentencing in cases decided before and after Chandler. Because I conclude that the Confrontation Clause of the Sixth Amendment applied to Muhammad’s capital resentencing proceeding, I respectfully dissent.

. Prior to Detective Smith's testimony, Muhammad’s counsel stated: "My basic objection as to what the State intends to use this witness for which is to come in here and give some kind of summary of everything that happened which involves the witness based on his investigation, telling the jury what other people did, what other people said, either over the radio or in person, and the objection I raise is this violates the rights of — -the confrontation rights of the defendant on the Sixth Amendment and Article 1616, whatever it is, of the Florida Constitution. I would like to have a standing objection.” Muhammad v. Tucker, 905 F.Supp.2d 1281, 1293 (S.D.Fla.2012) (citing Transcript of Trial, App. FF, at 2352-53.)

. "I don’t want to hear the same objection and be brought sidebar for the same objection. This is hearsay. It is hearsay. You made your confrontation rale argument. I have accepted your objection, your [sic] object to all of it.” Id. at 1294; see Principal and Response Brief of Appellee/Cross-Appellant, p. 23.

. "Our decision that the right of cross-examination of adverse witnesses is extended to capital sentencing proceedings is necessarily limited to the facts of the case before us, involving psychiatric reports.” Proffitt v. Wainwright, 706 F.2d 311, 312 (11th Cir.1983).

. I am troubled by the majority’s argument that because Chandler cites Del Vecchio v. Ill. *1084 Dep’t of Corr., 31 F.3d 1363, 1387-88 (7th Cir.1994), which relies upon Williams for the proposition that hearsay is admissible at a capital sentencing, the Circuit viewed Williams to be good law in 2001. While no party contests that the Supreme Court's decisions in the Williams cases have not been overturned, it is evident that the Supreme Court, along with our Circuit, has developed subsequent case law expanding Sixth Amendment protections in capital sentencing hearings. See, e.g. Davis v. Washington, 547 U.S. 813, 823-24, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); Crawford v. Washington, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); Proffitt v. Wainwright, 685 F.2d 1227, 1254 (11th Cir.1982).

. Further, it appears that the State did not even attempt to show the unavailability of the witnesses at issue in Muhammad's 1996 re-sentencing.